UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOSE LUIS FLORES,                )          No. C 07-1596 JSW (PR) &
                                 )          No. C 07-4846 JSW (PR)
                Petitioner,      )
                                 )          **ORDER DENYING**
   vs.                           )          **PETITIONS FOR WRIT OF**
                                 )          **HABEAS CORPUS**
B. CURRY, Warden,                )
                                 )
                Respondent.      )
_____ )

## INTRODUCTION

These are federal habeas corpus actions filed pursuant to 28 U.S.C. § 2254 in which Petitioner challenges the 2003 and 2006 findings by the Board of Prison Terms ("Board") that he is unsuitable for parole. For the reasons stated herein, the Court DENIES both petitions.

## BACKGROUND

In 1993, a San Diego Superior Court jury convicted Petitioner of conspiracy to commit kidnapping for ransom, *see* Cal. Pen. Code §§ 182(a)(1) & 209(a), kidnapping for ransom, *see id*. § 209(a), and kidnapping, *see id*. § 207(a). Petitioner also received sentencing enhancements for possession of a firearm, *see id*. § 12022(a)(1), the personal use of a weapon, *see id*. § 12022.5(a), and the possession of a firearm by a felon, *see id*. § 12021(a). The trial court sentenced Petitioner to life with the possibility of parole, plus

four years, for his kidnapping conviction.  The sentences on the remaining convictions were stayed.  (1Ans., Ex. A (Abstract of Judgment) at 1–2.)

In 2003 and 2006, the Board found Petitioner unsuitable for parole on grounds that he "would pose an unreasonable risk of danger to society or a threat to public safety if . . . released from prison."  (1Pet., Ex. A (Parole Hearing Transcript) at 48; 2Pet., Ex. 1 (Parole Hearing Transcript) at 44.)[1]

Petitioner's commitment offense was his participation in the kidnapping of Maria Isordia.  Petitioner and others kidnapped and held Isordia captive for eight days in an attempt to recover money from Isordia's son, who allegedly owed drug money to some of the conspirators.  The conspirators, who were armed, held Isordia captive in the United States and in Mexico.  Petitioner contends that his participation in the events was limited to making telephone calls in furtherance of the conspiracy, and watching, while armed, Isordia when she made a telephone call during her captivity.  (1Ans., Ex. B (State Appellate Opinion) at 2–3.)[2]

## A.     2003 Parole Hearing

At the 2003 parole hearing, the Board reviewed the circumstances of petitioner's commitment offense, his criminal history, his behavior in prison, and the opinion of law enforcement on the question of parole.  The Board found that the kidnapping and its related crimes were "carried out in an especially cruel and callous manner" in that Petitioner and others held Isordia captive by force and intimidation.  The Board also found that the motive was "inexplicable and very trivial in relation to the offense . . . [in that petitioner] participated in a kidnapping for ransom."  (1Pet., Ex. A at 48.)

The Board also reviewed petitioner's criminal and social history, his behavior

---

[1]  "1Pet." refers to Petitioner's petition challenging his 2003 parole denial.  "2Pet." refers to the petition challenging the 2006 parole denial.

[2]  "1Ans." refers to the answer filed in response to the petition challenging the 2003 denial.  "2Ans." refers to the answer filed in response to the petition challenging the 2006 parole denial.

while in prison, his psychological report, his parole plans, and the opinions of law

enforcement on whether Petitioner was suitable for parole.  In addition to the commitment

offense, Petitioner's criminal history was composed of an arrest for being under the

influence of a controlled substance, and an adult conviction for the transportation of a

controlled substance, for which he served 270 days in county jail.  The Board found that

this criminal history indicated that Petitioner had "failed to profit from society's previous

attempts to correct his criminal behavior."  (*Id*. at 45.)  This criminal history, the Board

found, also was related to his "unstable" social history, which involved the heavy use of

cocaine.  (*Id*. at 44.)  In reviewing his record, the Board acknowledged that Petitioner had

committed no serious disciplinary infractions while in custody, had acquired work the

work skill of welding among others, and had participated in self-help programs.  (*Id*. at

24–25.)  Petitioner's psychological report stated that Petitioner a "very good" insight into

his commitment offense, a fact that "supports a positive predication of successful

adapation to community living."  (*Id*. at 27.)  The report also stated that Petitioner's

"violence potential . . . is considered to be significantly below average related to this

Level II inmate population."  (*Id*.)  Petitioner, a native of Mexico, discussed his parole

plans with the Board, which, he felt would include his deportation to Mexico, and, while

there, living with his aunt.  Additionally, the Board heard from a representative of the San

Diego District Attorney, who voiced his office's opposition to granting parole to

Petitioner.  (*Id*. at 43.)  After a full hearing, during which all of the above evidence was

considered, the Board found petitioner unsuitable for parole.  (*Id*. at 48.)

In response to the Board's decision, Petitioner filed state habeas petitions, later

denied, in the state appellate and supreme courts.  (Pet. at 4.)  The state appellate court,

which issued the last reasoned decision, stated that Petitioner had failed "to state a prima

facie case for relief because the Board based its decision on proper criteria and there is

some evidence to support the Board's decision."  (Resp't's Mot. to Dismiss, Ex. 5 at 2.)

In 2007, Petitioner filed the action numbered 07-1596, in which he claims that the

Board's decision violated his right to due process.

1    **B.    2006 Parole Hearing**

2        At the 2006 parole hearing, the Board reviewed the circumstances of Petitioner's

3    commitment offense, his criminal history, his behavior in prison, his psychological report,

4    and the opinion of law enforcement.  The Board found that the offense was carried out in

5    a manner that was "especially cruel" and "dispassionate and calculated."  (2Pet., Ex. 1 at

6    44.)  The Board also noted the acts which constituted Petitioner's criminal history (*id.* at

7    22), a history which is described above.  The Board acknowledged that Petitioner had an

8    excellent record of behavior during his incarceration, in that he remained largely

9    disciplinary-free, and that he had participated in self-help programs.  (*Id.* at 29).  The

10   Board also noted that Petitioner's psychological report stated that his "potential for

11   dangerous behavior is definitely below average."  (*Id.* at 32.)  At the hearing, the Board

12   heard from a representative of the San Diego District Attorney who voiced his office's

13   opposition to granting parole to Petitioner.  (*Id.* at 38–39.)  After a full hearing, during

14   which all the above evidence was considered, the Board found Petitioner unsuitable for

15   parole.

16       In response to the Board's decision, Petitioner filed state habeas petitions, later

17   denied, in the state superior, appellate, and supreme courts.  (2Pet. at 4–5.)  The state

18   appellate court, which issued the last reasoned decision, stated that some evidence existed

19   to support the Board's decision to deny parole based on the circumstances of the

20   commitment offense.  (2Ans., Ex. I at 2.)  In 2007, Petitioner filed the action number 07-

21   4846 in which he claims that the Board's decision violated his right to due process.

22                                   **DISCUSSION**

23   **A.    Standard of Review**

24       This Court may entertain a petition for a writ of habeas corpus "in behalf of a

25   person in custody pursuant to the judgment of a State court only on the ground that he is

26   in custody in violation of the Constitution or laws or treaties of the United States."  28

27   U.S.C. § 2254(a); *Rose v. Hodges*, 423 U.S. 19, 21 (1975).

28       A district court may not grant a petition challenging a state conviction or sentence

4

1    on the basis of a claim that was reviewed on the merits in state court unless the state

2    court's adjudication of the claim:  "(1) resulted in a decision that was contrary to, or

3    involved an unreasonable application of, clearly established Federal law, as determined

4    by the Supreme Court of the United States; or (2) resulted in a decision that was based on

5    an unreasonable determination of the facts in light of the evidence presented in the State

6    court proceeding." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412–13

7    (2000).  A federal court must presume the correctness of the state court's factual findings.

8    28 U.S.C. § 2254(e)(1).  Habeas relief is warranted only if the constitutional error at issue

9    had a "substantial and injurious effect or influence in determining the jury's verdict."

10   Penry v. Johnson, 532 U.S. 782, 795 (2001) (internal quotation and citation omitted).

11   **B.    Due Process**

12   Petitioner claims that the Board's decisions in 2003 and 2006 violated his right to

13   due process.  (1Pet. at 6j; 2Pet. at 6.)

14   A denial of parole complies with due process provided there is "some evidence" to

15   support the parole board's decision.  A parole board's decision deprives a prisoner of due

16   process if such decision is not supported by "some evidence in the record," or is

17   otherwise "arbitrary."  *See Superintendent v. Hill*, 472 U.S. 445, 454–55 (1985); *Sass v.*

18   *California Bd. of Prison Terms*, 461 F.3d 1123, 1129 (9th Cir. 2006).  Additionally, the

19   evidence underlying the parole board's decision must have "some indicia of reliability."

20   *McQuillion v. Duncan*, 306 F.3d 895, 904 (9th Cir. 2002).  Accordingly, if a parole

21   board's determination with respect to parole suitability is to satisfy due process, such

22   determination must be supported by some evidence having some indicia of reliability.

23   *Rosas v. Nielsen*, 428 F.3d 1229, 1232 (9th Cir. 2005).

24   Here, in assessing whether there is "some evidence" to support the Board's denial

25   of parole, this Court must consider the regulations that guide the Board in making its

26   parole suitability determinations.  Pursuant to such regulations, "[t]he panel shall first

27   determine whether the life prisoner is suitable for release on parole[;] [r]egardless of the

28   length of time served, a life prisoner shall be found unsuitable for and denied parole if in

the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." 15 Cal. Code Regs. § 2402(a). Additionally, the regulations enumerate various circumstances tending to indicate whether or not an inmate is suitable for parole. *Id.*, § 2402(c)–(d).[3] One circumstance tending to show an inmate's unsuitability is that the crime was committed in an "especially heinous, atrocious or cruel manner." *Id.*, § 2402(c). Two factors that the parole authority may consider in determining whether such a circumstance exists are whether "[t]he offense was carried out in a manner that demonstrates an exceptionally callous disregard for human suffering," and whether "[t]he motive for the crime is inexplicable or very trivial in relation to the offense." *Id.*, § 2402(c)(1)(D) & (E). In addition to these factors, the Board is to consider "all relevant, reliable information available." *Id.*, § 2402(b).

It is now established under California law that the task of the Board is to determine whether the prisoner would be a danger to society if he or she were paroled. *See In re Lawrence*, 44 Cal. 4th 1181 (2008). Consequently, the constitutional "some evidence" requirement is that there exists some evidence that the prisoner constitutes such a danger, not simply that there exists some evidence of one or more of the factors listed in the regulations as considerations appropriate to the parole determination. *Id.* at 1205–06.

In that regard, however, a parole authority's continued reliance on the circumstances of the commitment offense as the sole basis for denying parole can, over time, raise due process concerns. *See Biggs v. Terhune*, 334 F.3d 910, 916 (9th Cir.

---

[3] The circumstances tending to show an inmate's unsuitability are: (1) the commitment offense was committed in an "especially heinous, atrocious or cruel manner;" (2) previous record of violence; (3) unstable social history; (4) sadistic sexual offenses; (5) psychological factors such as a "lengthy history of severe mental problems related to the offense;" and (6) prison misconduct. 15 Cal. Code Regs. § 2402(c). The circumstances tending to show suitability are: (1) no juvenile record; (2) stable social history; (3) signs of remorse; (4) commitment offense was committed as a result of stress which built up over time; (5) Battered Woman Syndrome; (6) lack of criminal history; (7) age is such that it reduces the possibility of recidivism; (8) plans for future including development of marketable skills; and (9) institutional activities that indicate ability to function within the law. *Id.* § 2402(d).

2003).  "[I]n some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from the relevant California statutes." *Irons v. Carey*, 505 F.3d 846, 854 (9th Cir. 2007).

Here, the Court cannot say the state court was unreasonable in concluding there is some evidence to support the Board's 2003 and 2006 decisions that Petitioner would be a danger to society if released.  Specifically, the record contains some evidence to support the Board's findings, including the circumstances of the commitment offense, and his criminal history.

First, some evidence clearly exists to support the Board's 2003 and 2006 determinations that the circumstances of the commitment offense indicated Petitioner presented a risk of danger to society if released.  Specifically, the record contains evidence that the commitment offense was "carried out in an especially cruel and callous manner."  Petitioner and his co-conspirators abducted Isordia from her home, in the presence of her eighty-eight year old mother, held Isordia against her will in Mexico and in the United States, and, by making her know that they had guns, kept her in fear.  Under such circumstances, the Board's description of the offense as "cruel and callous" is not unreasonable, and, consequently, so is its finding that Petitioner presents an unreasonable risk of danger to society if released.

Second, some evidence exists to support the Board's 2003 finding that the motive was "inexplicable and very trivial in relation to the offense."  Specifically, Petitioner and his co-conspirators kidnapped Isordia in order to recover drug money from another.

Although at some point in the future, the circumstances of the commitment offense may cease to have probative value as to the question of petitioner's dangerousness, they constitute, as of the time of the Board's decision, some evidence to support the Board's finding.

Additionally, petitioner's criminal and social history constitute evidence of petitioner's unsuitability for parole in 2003.  Specifically, Petitioner's arrests and his

1   conviction for drug offense before committing the instant offenses does support the

2   Board's 2003 finding that Petitioner failed to profit from society's previous attempts to

3   correct his criminality.

4       In short, the Board's 2003 and 2006 decisions are supported by some evidence.

5   Accordingly, Petitioner's claims are DENIED.

6   **CONCLUSION**

7       Because the record contains, at a minimum, some evidence to support the Board's

8   2003 and 2006 determinations that Petitioner would present an unreasonable risk of

9   danger to society if released, the Court finds the state court's determinations were neither

10  contrary to nor an unreasonable application of clearly established Supreme Court

11  precedent, nor can the Court say they were based on an unreasonable determination of the

12  facts.  Accordingly, the petitions for a writ of habeas corpus, Case No. 07-1596 and Case

13  No. 07-4846, are hereby DENIED.

14      The Clerk shall enter judgment in favor of Respondents in Case No. 07-1596 and

15  in Case No. 07-4846, and close the files.

16      **IT IS SO ORDERED.**

17  DATED: August 18, 2009

18                                  JEFFREY S. WHITE
                                United States District Judge

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

JOSE LUIS FLORES,

        Plaintiff,

  v.

BEN CURRY et al,

        Defendant.

_____/

Case Number: CV07-01596 JSW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on August 18, 2009, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Jose Luis Flores
J03392
P.O. Box 689
Soledad, CA 93960

Dated: August 18, 2009

*Jennifer Ottolini*

Richard W. Wieking, Clerk
By: Jennifer Ottolini, Deputy Clerk

9

1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

JOSE LUIS FLORES,

          Plaintiff,

   v.

BEN CURRY et al,

          Defendant.

_____/

Case Number: CV07-04846 JSW

**CERTIFICATE OF SERVICE**

11
12

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

13
14
15

That on August 18, 2009, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

16
17
18
19

Jose Luis Flores
J03392
Correctional Training Facility
P.O. Box 689
Soledad, CA 93960

20

Dated: August 18, 2009

*Jennifer Ottolini*

21

Richard W. Wieking, Clerk
By: Jennifer Ottolini, Deputy Clerk

22
23
24
25
26
27
28

10